## Termination of Long-term Foster Placements

PACKEL, Attorney General, June 11, 1974.—The question has been raised as to whether a long-term foster placement may be terminated without affording an opportunity to the foster parents and child of a hearing at which they could challenge the accuracy or sufficiency of the reasons given for the termination and at which the interests of the child in the family relationship can be examined and determined. It is our opinion, and you are so advised, that long-term foster parents and children have sufficient personal and property interests in a continuing family relationship to have a right, as delineated below, to a hearing before a foster child is removed by an agency subject to the jurisdiction of the Department of Public Welfare.

In Pennsylvania, deprived or delinquent children are frequently placed by the court with a public or private child welfare agency. See the Juvenile Act of December 6, 1972, P. L. 1054 (No. 333), 11 PS §§50-321. These agencies have broad authority to care for the child (Id., §50-327), and they are subject to regulation by the Department of Public Welfare. See Public Welfare Code of June 13, 1967, P. L. 31, 62 PS §§901, 902, 911 and Act of June 24, 1937, P. L. 2017 as amended, 62 PS §2301. It is these agencies that commonly place children in foster homes and supervise their care in such homes.

The Department of Public Welfare controls the relationship between the placing agencies and the foster homes by written regulations. Title 4300, Foster Family Care Under Social Service Auspices. These regulations require agencies to have:

"[Written] policies and procedures governing the

recruitment of foster homes [and] the standards on which homes are evaluated": Section 4310(a).

Each home must be evaluated as to its suitability as a foster home both before and during placement: Sections 4312(a), (c), (d), (3) and 4331(a). The regulations also require the agency to have a written agreement with the foster parents "setting forth the terms of placement": Section 4341(1). If the foster parents do not meet the requirements of the agency, workers from the agency must assist them to meet agency standards: Section 4342(2). The agency may remove a foster child if it determines the home is unsuitable for continued placement: Sections 4312(e) and 4333(6).

Thus, when a foster placement is terminated because the home is found to be unsuitable, the termination is a complex combination of departmental and local agency action. The standards may be defined by the local child welfare agency, and the evaluation may be conducted by this local authority. But the standards and the evaluation are mandated by the department. In addition, the preparations for the termination are mandated by the department: Sections 4333(1), (6) and 4342(4). It is our conclusion that, whether the action is viewed as an act of the department or as an act of the local agency, a hearing is required.

If a termination is viewed as an action of the department, the Administrative Agency Law of June 4, 1945 P. L. 1388, 71 PS §1710.1, et seq., applies because that act defines "agency" to mean:

"[A]ny department, departmental administrative board or commission, . . . officer or other agency of this Commonwealth, now in existence or hereafter created, having Statewide jurisdiction, empowered to determine or affect private rights, privileges, im-

munities, or obligations by regulation or adjudication": 71 PS §1710.2(b).[1]

This act provides that:

"No adjudication shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings": 71 PS §1710.31.

A termination of a long-term foster placement is an "adjudication" within the meaning of the act because that term is defined as follows:

"any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities or obligations of any or all of the parties to the proceeding": 71 PS §1710.-2(a).

The termination of an established foster placement is a decision that affects personal privileges, rights and obligations that arise out of the family relationship, contractual rights, and State regulations.[2] See Departmental Regulations cited above. Further, such a termination affects the right to the care, custody and companionship of the child, rights that have long been recognized by the United States Supreme Court as fundamental. May v. Anderson, 345 U. S. 528, 533 (1953); Stanley v. Illinois, 405 U. S. 645, 652 (1972). It also affects the right of the child to a continuing

---

[1] See also 71 PS §1710.51(48).

[2] Agency action that results from an alleged violation of departmental regulations normally gives rise to a right to a hearing when that action directly affects personal rights or privileges. See, e.g., Commonwealth v. Taylor, 93 Dauph. 48 (1970); Sharp's Convalescent Home v. Dept. of Public Welfare, 7 Comm. Ct. 623 (1973).

family relationship, a right recognized by State statute and regulation.[3] See 11 PS §50-101(b)(1), (3); Title 4300 DPW Manual §4302(a). We do not believe that rights growing out of the fundamental family relationship are less significant merely because the parent is a foster parent, rather than a natural parent. A foster parent or a foster child necessarily develops the same feelings of love and loyalty as a natural parent or child, and, indeed, departmental regulations state that a major goal of foster care is to provide "experiences in family living which are essential to the [child's] constructive growth and development when their own parents are unable to provide this": Section 4302(a). Moreover, when the family relationship is at stake, the Supreme Court has looked to the reality of the emotional bonds, not to formalities: Levy v. Louisiana, 391 U. S. 68, 71-2 (1968). In short, there can be little doubt that a decision affecting a long-term foster placement is a decision that affects "rights, privileges, immunities or obligations," and must, therefore, be considered an adjudication within the meaning of the Administrative Agency Law.

If the termination is viewed as an action of the local agency, a hearing is required by the Local Agency Law. This act defines "local agency" as:

"[A]ny department, . . . independent administrative board or commission, office or other agency of a political subdivision . . . empowered to determine or affect private rights, privileges, immunities or obligations by adjudication": 53 PS §11302(2).

---

[3] Although the child welfare agency, as legal custodian, can be expected to attempt to represent the interests of the child, the agency necessarily develops its own interests and perspectives, and the child should not be precluded from asserting his own-felt needs.

When the child welfare agency is a county agency, there can be no doubt that it is an agency of a political subdivision within the meaning of this Act. Cf. Smethport Area School District v. Bowers, 219 Pa. Superior Ct. 269 (1971). When the child welfare agency is a private agency, it carries out county functions insofar as it places children in foster homes and terminates such placements because the home is unsuitable: 62 PS §§2301(a), (d), (i), 2305, 2309 and 2251; Act of May 16, 1921, P. L. 666, 11 PS §§272, 303. Because private placement agencies receive public funds and carry out a function assigned by law to the counties, they should be treated as agencies "of a political subdivision" within the meaning of the Local Agency Law insofar as their placement function is regulated by the Department of Public Welfare.

The Local Agency Law defines "adjudication" substantially as does the Administrative Agency Law: 53 PS §11302(1). And, in language substantially identical to that of the Administrative Agency Law, the Local Agency Law requires notice and an opportunity to be heard before an "adjudication" of a local agency can be valid: 53 PS §11304.

Therefore, we conclude that the Administrative Agency Law and the Local Agency Law require the department to assure a due process hearing to foster parents before the removal of a foster child because of the alleged unsuitability of the home as measured by departmentally required standards and agreements. We have attached for your convenience a proposed draft of an amendment to the department's regulations that would fully satisfy the requirements of State law. You will note that we do not believe a truly temporary foster placement necessarily gives rise to a sufficiently direct interest in the foster parent to require a right to a hearing. Nor is a prior hearing required where

the child is being abused physically or where his removal is caused by court order.[4]

Although this opinion is based on the Administrative Agency Law and the Local Agency Law, there is also a serious issue as to whether the due process clause of the Fourteenth Amendment to the United States Constitution also requires notice of the right to a hearing before termination of long-term foster placement. See, e.g., Perry v. Sindermann, 408 U. S. 593 (1972); Bell v. Burson, 402 U. S. 535 (1971); Goldberg v. Kelly, 397 U. S. 254 (1970); Sniadach v. Family Finance Corp., 395 U. S. 337 (1969). Compliance with this opinion, therefore, will help to prevent needless constitutional litigation against the Department of Public Welfare.[5]

We recognize that this opinion will require some adjustment in traditional practice and attitude. The department does, however, have significant experience with the provision of hearings in the area of public assistance benefits, and this experience can easily be of utility in the foster care area. A right to a notice of a prior hearing will remedy many potential abuses. See Levine, Caveat Parens, A Demystification of the Child Protection System, 35 U. of Pitts. L. Rev. (1973). It will cause child welfare agencies to rely only on substantial information and to weigh carefully a decision that affects human feelings and development in fundamental ways. Cf. Beyond the Best Interests of the Child, Freud, Goldstein and Solnit (Free Press, 1973). In our opinion, the Administrative Agency Law, or, in the alternative, the Local Agency Law, requires the

---

[4] Only "*reasonable* notice of a hearing and *an opportunity* to be heard" are required by the statute.

[5] Litigation raising precisely this constitutional issue has been recently filed in Federal court in New York City.

promulgation by the Department of regulations substantially similar to the proposed rules attached as Appendix "A".

## APPENDIX A

Title 4300 of the Children and Youth Manual of the Department of Public Welfare, entitled "Foster Family Care Under Social Services Auspices" is amended by the addition of the following provisions:

4335 *TERMINATION OF PLACEMENT*

"A. No child who has been placed in one home for longer than six (6) months shall be removed from that foster home on the grounds that the home is no longer suitable for continued placement unless:

"1. The standards for evaluation of homes required by Section 4311(A) have been provided to the foster parents; and

"2. Any alleged inadequacies in the home have been specially communicated to the foster parents, and the worker assigned to the foster home has attempted to assist the foster parents in overcoming these inadequacies pursuant to Section 4342(2); and

"3. Substantial evidence of inadequacies in the home continue to exist after the efforts required by subsection (2) of this Section; and

"4. The requirements of Sections 4333 and 4342(4) have been fully complied with; and

"5. The foster parents have been informed in writing that, upon their written request, a hearing before an officer assigned by the Department of Public Welfare pursuant to the Administrative Agency Law, 71 PS §1710.1, *et seq.*, will be held in order for the foster parents to challenge the accuracy or sufficiency of the reasons given for the proposed termination. This notice must conform to the form designated by the Secretary and must include:

"(a) A statement that the foster parents may be represented by legal counsel or other representative of their choice at the hearing.

"(b) A statement as to the purpose of the hearing as defined herein.

"(c) The address of the office as designated by the Secretary to which a demand for a hearing must be sent.

"(d) A statement that the hearing will be held before the termination of the placement.

"(e) A statement that failure to demand a hearing within one (1) week of receipt of the notice will be a waiver of any rights under this Section.

"B. Notwithstanding any other provision of these regulations, a child may be removed from a home without a prior hearing if:

"1. The removal is necessary because of a condition, limitation, or revision of any Court order authorizing the placement of the child; or

"2. The removal is immediately necessary to protect the child from significant physical mistreatment or abuse, and the foster parent is informed of his right to a hearing to be provided after the termination if demanded within one (1) week of the removal."